**[ORAL ARGUMENT NOT SCHEDULED]**

**Nos. 22-5150, 23-5002**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————————

MARIA ESPARRAGUERA,

Plaintiff-Appellant,

v.

DEPARTMENT OF THE ARMY, et al.,

Defendants-Appellees.

———————————————

On Appeal from the United States District Court
for the District of Columbia

———————————————

**BRIEF FOR APPELLEES**

———————————————

BRIAN M. BOYNTON
  *Principal Deputy Assistant
  Attorney General*

CHARLES W. SCARBOROUGH
BRAD HINSHELWOOD
  *Attorneys, Appellate Staff
  Civil Division, Room 7256
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 514-7823*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

### A.    Parties and Amici

Plaintiff-Appellant in both cases is Maria Esparraguera. Defendants-Appellees in both cases are the Department of the Army; Christine Wormuth, in her official capacity as Secretary of the Army; Gabe Camarillo, in his official capacity as Under Secretary of the Army; and the Merit Systems Protection Board.

There were no amici in district court, and none have appeared in this Court.

### B.    Rulings Under Review

In appeal No. 22-5150, plaintiff seeks review of the March 24, 2022 order of the district court (Kelly, J.) granting defendants' motion to dismiss for failure to state a claim.  JA 96.  The district court's unpublished memorandum opinion accompanying that order is available on Westlaw.  *Esparraguera v. Department of the Army*, No. 21-cv-421, 2022 WL 873513 (D.D.C. Mar. 24, 2022).

In appeal No. 23-5002, plaintiff seeks review of the December 14, 2022 order of the district court (Kelly, J.) dismissing her suit. JA 165. The district court's unpublished memorandum opinion accompanying that order is available on Westlaw. *Esparraguera v. Department of the Army*, No. 22-cv-1109, 2022 WL 17668808 (D.D.C. Dec. 14, 2022).

## C.     Related Cases

Neither case has previously been before this Court. Counsel is not aware of any related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C).

*/s/ Brad Hinshelwood*
Brad Hinshelwood

# TABLE OF CONTENTS

**Page**

GLOSSARY

STATEMENT OF JURISDICTION................................................................1

STATEMENT OF THE ISSUES...................................................................1

PERTINENT STATUTES AND REGULATIONS ...................................2

STATEMENT OF THE CASE .......................................................................2

    A.   Statutory Background.................................................................2

    B.   Factual Background...................................................................7

    C.   Prior Proceedings ....................................................................11

SUMMARY OF ARGUMENT ......................................................................16

STANDARD OF REVIEW............................................................................20

ARGUMENT ......................................................................................................20

I.    Senior Executive Service Employees Have No Property
    Interest Protected under the Due Process Clause in Their
    Executive Positions ........................................................................20

    A.   Government Executives Removable on the Basis of an
        Appointing Authority's Assessment of their
        Performance Have No Entitlement to their High-
        Ranking Government Positions.............................................21

    B.   Esparraguera Identifies No Statutory Language
        Creating an Entitlement to Hold a High-Ranking
        Executive Position.................................................................31

II.   Even if Esparraguera Had a Property Interest in Her
    Executive Position, She Received Adequate Process....................39

CONCLUSION ........................................................................................52

CERTIFICATE OF COMPLIANCE

ADDENDUM

## TABLE OF AUTHORITIES

**Cases:**                                                      **Page(s)**

*Acosta-Orozco v. Rodriguez-de-Rivera,*
  132 F.3d 97 (1st Cir. 1997) ................................................................. 46

*Acting Special Counsel v. U.S. Customs Serv.,*
  31 M.S.P.R. 342 (1986) ...................................................................... 37

*American Mfrs. Mut. Ins. Co. v. Sullivan,*
  526 U.S. 40 (1999) ............................................................................. 20

*Anglemyer v. Hamilton Cty. Hosp.,*
  58 F.3d 533 (10th Cir. 1995) ............................................................. 46

*Armstrong v. Manzo,*
  380 U.S. 545 (1965) ........................................................................... 40

*Benavidez v. City of Albuquerque,*
  101 F.3d 620 (10th Cir. 1996) ........................................................... 42

*Berger v. Department of Energy,*
  36 M.S.P.R. 48 (1987) ........................................................................ 22

*Board of Regents of State Colls. v. Roth,*
  408 U.S. 564 (1972) ........................................................................... 20

*Cain v. Larson,*
  879 F.2d 1424 (7th Cir. 1989) ........................................................... 33

*Carter v. Western Reserve Psychiatric Habilitation Ctr.,*
  767 F.2d 270 (6th Cir. 1985) ............................................................. 42

*Ciambriello v. County of Nassau,*
  292 F.3d 307 (2d Cir. 2002) ......................................................... 43, 46

*Cleveland Bd. of Educ. v. Loudermill*,
    470 U.S. 532 (1985) ..................................................................... 26, 42

*Delaware Riverkeeper Network v. FERC*,
    895 F.3d 102 (D.C. Cir. 2018), *overruled in part on other grounds by*
    *Alleghany Def. Project v. FERC*, 964 F.3d 1 (D.C. Cir. 2020).............. 45

*Doe v. Miami Univ.*,
    882 F.3d 579 (6th Cir. 2018) ................................................................ 47

*Esparraguera v. Department of the Army*,
    981 F.3d 1328 (Fed. Cir. 2020), *cert. denied*,
        142 S. Ct. 1415 (2022) ..............5-6, 7, 8, 11, 12, 19, 24, 28, 44, 49, 50
    142 S. Ct. 1415 (2022) ........................................................................ 12

*Fields v. Durham*,
    909 F.2d 94 (4th Cir. 1990) ................................................................. 46

*Garrow v. Gramm*,
    856 F.2d 203 (D.C. Cir. 1988).................................. 20, 21, 26, 32, 36, 38

*Gilbert v. Homar*,
    520 U.S. 924 (1997) ......................................................................... 39, 42

*Goodrich v. Newport News Sch. Bd.*,
    743 F.2d 225 (4th Cir. 1984) ............................................................47-48

*Goss v. Lopez*,
    419 U.S. 565 (1975) .............................................................................. 45

*Griffith v. Federal Labor Relations Auth.*,
    842 F.2d 487 (D.C. Cir. 1988)....................................... 17, 21, 30, 31, 34

*Hall v. Ford*,
    856 F.2d 255 (D.C. Cir. 1988)................................................... 18, 32, 36

*Harrison v. Bowen*,
    815 F.2d 1505 (D.C. Cir. 1987) .......................................................... 50

*Hennigh v. City of Shawnee*,
  155 F.3d 1249 (10th Cir. 1998) .................................................33-34, 34

*Johnson v. United States*,
  628 F.2d 187 (D.C. Cir. 1980)..............................................................25

*King v. Jackson*,
  487 F.3d 970 (D.C. Cir. 2007)..............................................................20

*Lindahl v. Office of Pers. Mgmt.*,
  470 U.S. 768 (1985) ........................................................................2, 14

*Locurto v. Safir*,
  264 F.3d 154 (2d Cir. 2001) .................................................................42

*Lovshin v. Department of the Navy*,
  767 F.2d 826 (Fed. Cir. 1985)..............................................................38

*Maples v. Martin*,
  858 F.2d 1546 (11th Cir. 1988) ...........................................................46

*Mathews v. Eldridge*,
  424 U.S. 319 (1976) ......................................................... 19, 39, 40, 42

*McCammon v. Indiana Dep't of Fin. Inst.*,
  973 F.2d 1348 (7th Cir. 1992) .............................................................26

*McDarby v. Dinkins*,
  907 F.2d 1334 (2d Cir. 1990) ..............................................................47

*Memphis Light, Gas & Water Div. v. Craft*,
  436 U.S. 1 (1978) .................................................................................33

*Miyler v. Village of E. Galesburg*,
  512 F.3d 896 (7th Cir. 2008) .........................................................33, 34

*Nguyen v. Department of Homeland Sec.*,
  737 F.3d 711 (Fed. Cir. 2013)..............................................................46

vii

*Santos v. NASA*,
   990 F.3d 1355 (Fed. Cir. 2021) ............................................................ 38

*Stone v. Federal Deposit Ins. Corp.*,
   179 F.3d 1368 (Fed. Cir. 1999) ...................................................... 37, 38

*Tate v. District of Columbia*,
   627 F.3d 904 (D.C. Cir. 2010) .............................................................. 47

*Torres-Rosado v. Rotger-Sabat*,
   335 F.3d 1 (1st Cir. 2003) .................................................................... 47

*United States v. Fausto*,
   484 U.S. 439 (1988) ............................................................................... 2

*Walker v. City of Berkeley*,
   951 F.2d 182 (9th Cir. 1991) ................................................................ 42

*Wheaton v. Webb-Petett*,
   931 F.2d 613 (9th Cir. 1991) .......................................................... 34, 35

**Statutes:**

Civil Service Reform Act of 1978,
   Pub. L. No. 95-454, 92 Stat. 1111 .......................................................... 2
      § 3(6), 92 Stat. at 1113 ................................................................... 28
      tit. IV, § 7543(a), 92 Stat. at 1174 .................................................. 25
      § 415(b), 92 Stat. at 1179 ............................................................... 29
   5 U.S.C. § 2101a ...................................................................................... 3
   5 U.S.C. § 2302(a)(2)(B) ................................................................. 36, 37
   5 U.S.C. § 2302(b) ............................................................................ 8, 32
   5 U.S.C. § 2302(b)(6) .............................................................................. 8
   5 U.S.C. § 3131 ............................................................................... 15, 22
   5 U.S.C. § 3131(1) ................................................................................ 23
   5 U.S.C. § 3131(2) .................................................................... 3, 23, 43
   5 U.S.C. § 3131(5) ................................................................................ 46
   5 U.S.C. § 3131(7) ................................................................................ 51
   5 U.S.C. § 3132(a)(2) .................................................................... 3, 23

5 U.S.C. § 3132(a)(5) ............................................................. 36

5 U.S.C. § 3132(a)(6) ............................................................. 36

5 U.S.C. § 3132(a)(7) ............................................................. 36

5 U.S.C. § 3395 ........................................................................ 46

5 U.S.C. § 3592 ..................................................... 5, 6, 14, 28

5 U.S.C. § 3592(a) ............................................................. 1, 11

5 U.S.C. § 3592(a)(1) ............................................................. 36

5 U.S.C. § 3592(a)(2) ............................. 4, 16-17, 21, 24, 39

5 U.S.C. § 3592(c) .................................................................. 36

5 U.S.C. § 3594(b)-(c) .............................................................. 4

5 U.S.C. § 3594(c)(2) .............................................................. 41

5 U.S.C. § 4312(d) .......................................................... 5, 17, 24

5 U.S.C. § 4313 ............................................................. 5, 17, 24

5 U.S.C. § 4314(b)(2) ........................................................ 5, 41

5 U.S.C. § 4314(c) ............................................................ 5, 24

5 U.S.C. § 4314(c)(5) ............................................................... 5

5 U.S.C. § 5382(a) ............................................................ 4, 23

5 U.S.C. § 5384(b)(2) ...................................................... 4, 23

5 U.S.C. § 7513 ................................................................. 27-28

5 U.S.C. § 7513(a) ................................................................ 25

5 U.S.C. § 7543 ................................................................. 27-28

5 U.S.C. § 7543(a) ....................................................... 6, 27, 50

5 U.S.C. § 7543(b) ................................................................... 6

5 U.S.C. § 7543(d) ................................................................... 6

5 U.S.C. § 7703(a)(1) .............................................................. 11

5 U.S.C. § 7703(b)(1)(A) ......................................................... 11

Pub. L. No. 97-35, § 1704(d)(2), 95 Stat. 357, 758 (1981) ...................... 27

Pub. L. No. 98-615, tit. III, § 304(c), 98 Stat. 3195, 3219 (1984) ........... 27

5 U.S.C. § 1212(a)(1) ................................................................. 8

5 U.S.C. § 1212(a)(2) ................................................................. 8

5 U.S.C. § 3323(b)(1) ................................................................ 37

5 U.S.C. § 4303 ........................................................................ 37

5 U.S.C. § 4303(b)-(e) ...................................................................38

5 U.S.C. § 5335(a)(B) (1982) ........................................................30

5 U.S.C. § 5376(b)(1)(A) ...........................................................4, 23

5 U.S.C. § 6304(f) ...............................................................4, 23, 41

5 U.S.C. § 7701 ...........................................................................27-28

5 U.S.C. § 7701(c)(1)(A) ...............................................................38

28 U.S.C. § 1291............................................................................... 1

28 U.S.C. § 1295(a)(9) .....................................................................11

**Regulations:**

5 C.F.R. §§ 430.301-.314 .................................................................5

5 C.F.R. § 534.403(a) .................................................................4, 23

5 C.F.R. § 1201.144(c) ...............................................................6, 11

**Rule:**

Fed. R. App. P. 4(a)(1)(B) ............................................................... 1

**Legislative Materials:**

H. Rep. No. 97-158, vol. III (1981) .........................................3, 29

S. Rep. No. 95-969 (1978) .................................................3, 28, 29

S. Rep. No. 98-351 (1984) ..................................4, 16, 22, 29-30

x

# GLOSSARY

| | |
|---|---|
| CSRA | Civil Service Reform Act of 1978 |
| GS | General Schedule |
| MSPB | Merit Systems Protection Board |
| SES | Senior Executive Service |

## STATEMENT OF JURISDICTION

The district court entered final judgment dismissing the complaint in No. 21-cv-421 on March 24, 2022.  JA 96.  A notice of appeal was filed on May 20, 2022.  JA 107; *see* Fed. R. App. P. 4(a)(1)(B) (60-day time limit).  The district court entered final judgment dismissing the complaint in No. 22-cv-1109 on December 14, 2022.  JA 165.  A notice of appeal was filed on January 4, 2023.  JA 172; *see* Fed. R. App. P. 4(a)(1)(B) (60-day time limit).  This Court has jurisdiction over both appeals under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

Under the Civil Service Reform Act of 1978 (CSRA), career government executives may be removed from the Senior Executive Service (SES) and placed into a non-SES civil service position with no loss in basic pay "at any time for less than fully successful executive performance."  5 U.S.C. § 3592(a)(2).  Plaintiff Maria Esparraguera was removed from an SES position at the Department of the Army and placed into a career civil service position under this provision.

The questions presented are:

1. Whether Esparraguera has a protected property interest in her SES position, as required for a Fifth Amendment due process claim.

2. Whether, assuming Esparraguera has such an interest, the process she received satisfied the Due Process Clause.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes and regulations are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A.    Statutory Background

The Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat. 1111 (codified at 5 U.S.C. § 1101 *et seq.*), "comprehensively overhauled the civil service system," *Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768, 773 (1985), with the overarching goal of "balanc[ing] the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration," *United States v. Fausto*, 484 U.S. 439, 445 (1988).  As part of that overhaul, Congress created a new class of federal managerial employees placed in the "Senior Executive Service."  In creating the SES, "Congress intended to provide an elite corps of executives[] . . . characterized by excellence and mobility" that

would "give up certain procedural protections in return for opportunities for increased responsibilities, reassignments, transfers, and bonuses," H. Rep. No. 97-158, vol. III, at 49 (1981), tracking "the kind of system that has been highly successful in the private sector," S. Rep. No. 95-969, at 10-11 (1978); *see* 5 U.S.C. § 3131(2) (stating that for SES employees, "compensation, retention, and tenure are contingent on executive success").

Employees in the SES hold positions "not required to be filled by an appointment by the President by and with the advice and consent of the Senate," but they perform important executive functions.  5 U.S.C. § 3132(a)(2).  An SES employee "directs the work of an organizational unit," "monitors progress toward organizational goals and periodically evaluates and makes appropriate adjustments to such goals," "supervises the work of employees other than personal assistants," or otherwise "exercises important policy-making, policy-determining, or other executive functions" and is "held accountable for the success of one or more specific programs or projects."  *Id.*; *see id.* § 2101a.

Along with these responsibilities, SES employees also receive generally higher levels of basic pay than civil service employees paid

under the General Schedule (GS). *See* 5 U.S.C. §§ 5376(b)(1)(A), 5382(a); 5 C.F.R. § 534.403(a) (together providing that the minimum basic pay for an SES employee is 120 percent of the minimum rate of basic pay for GS-15, Step 1 of the General Schedule). Career SES employees are also eligible for performance awards of between five and twenty percent of their basic pay. 5 U.S.C. § 5384(b)(2). And career SES employees are able to accumulate more annual leave than employees in other pay systems. *See id.* § 6304(f).

The tradeoff for these benefits is that SES employees are generally "subject to legally unencumbered removals for poor performance." S. Rep. No. 98-351, at 3 (1984). Non-probationary career SES employees can be removed from their SES positions "at any time for less than fully successful executive performance as determined under subchapter II of chapter 43 of this title." 5 U.S.C. § 3592(a)(2). After a performance-based removal from the SES, the employee is placed in another civil service position outside the SES, but with no reduction in the basic pay the employee enjoyed in her SES position. *Id.* § 3594(b)-(c).

4

Chapter 43 and its implementing regulations vest authority to assess a career SES employee's performance in the agency head or other appointing official (or his designee).  In determining that rating, the official considers a list of non-exhaustive criteria in assessing the employee's "individual and organizational performance."  5 U.S.C. § 4313.  The official also considers recommendations from a "performance review board" established by each agency.  *Id.* § 4314(c); *see generally* 5 C.F.R. §§ 430.301-.314.  For reviews of career SES employees like Esparraguera, "more than one-half of the members of the performance review board shall consist of career appointees."  5 U.S.C. § 4314(c)(5).

Performance ratings of career SES employees issued by agency heads or other appointing authorities are not appealable to the Merit Systems Protection Board (MSPB) or to any other official or entity.  5 U.S.C. § 4312(d).  Similarly, unlike adverse performance-based actions for other employees, the decision by an agency head or designee to remove a career SES employee from her SES post for performance reasons under § 3592(a)(2) cannot be challenged before the MSPB.  5 U.S.C. § 3592; *Esparraguera v. Department of the Army*, 981 F.3d 1328,

5

1335-36 (Fed. Cir. 2020), *cert. denied*, 142 S. Ct. 1415 (2022).  Instead, such employees may request "an informal hearing before an official designated by the Merit Systems Protection Board at which the career appointee may appear and present arguments," although requesting that hearing does not delay the employee's removal from the SES.  5 U.S.C. § 3592.  At the conclusion of that hearing, the presiding official refers the record of the hearing "to the Special Counsel, the Office of Personnel Management, and the employing agency for whatever action may be appropriate."  5 C.F.R. § 1201.144(c).

The CSRA provides more expansive procedures to career SES employees who face removal from government service entirely, rather than placement in another civil service position with no loss in basic pay.  A career SES employee may only be terminated from the civil service or suspended more than 14 days "for misconduct, neglect of duty, malfeasance, or failure to accept a directed reassignment or to accompany a position in a transfer of function."  5 U.S.C. § 7543(a).  Career SES employees fired under this provision generally receive a pre-termination opportunity to respond to the proposed removal and can seek post-termination review before the MSPB.  *Id.* § 7543(b), (d).

### B.    Factual Background

In 2014, plaintiff Maria Esparraguera was serving as the Chief
Counsel of the Army's Communication-Electronics Command.  In that
role, she was responsible for recommending a candidate to fill a GS-15
Division Chief position.  JA 13, 19.  Esparraguera's preferred candidate
for the position lacked the requisite time-in-grade for appointment to
the position when he applied.  JA 14.  Esparraguera proposed a
rotational process in which her preferred candidate and two other
finalists would each occupy the position for thirty days—a process
Esparraguera had never previously employed.  JA 15; *see Esparraguera*,
981 F.3d at 1331 (noting that Esparraguera "proposed an unorthodox—
indeed, unprecedented—post-interview rotation plan for the final
selection").  In January 2015, after that rotational process had
concluded, Esparraguera's preferred candidate was selected; the time
required for the rotational process delayed selection long enough that
the candidate met the time-in-grade requirement for the position.  JA
15; *Esparraguera*, 981 F.3d at 1332.  In the fall of 2015, Esparraguera
was transferred within the SES to be the Director of Civilian Personnel
Labor and Employment Law within the Department of the Army,

7

making her the Army's "highest-ranking civilian personnel attorney."

JA 9.

Shortly after the new Division Chief was hired, the Office of

Special Counsel—an Executive Branch entity charged with

investigating potential violations of merit system principles established

by the CSRA, *see* 5 U.S.C. § 1212(a)(1), (2); *id.* § 2302(b)—received

allegations that Esparraguera had committed a prohibited personnel

practice in her conduct of the hiring process.  JA 122.  The Special

Counsel investigated and concluded that Esparraguera had violated 5

U.S.C. § 2302(b)(6), which provides that it is a prohibited personnel

practice to "grant any preference or advantage not authorized by law,

rule, or regulation to any employee or applicant for employment

(including defining the scope or manner of competition or the

requirements for any position) for the purpose of improving or injuring

the prospects of any particular person for employment."  *See* JA 16.  The

Special Counsel conveyed this conclusion to the Department in two

reports: a summary of its findings in October 2016 (which Esparraguera

received shortly thereafter) and a lengthier report in February 2018.

JA 16-17; *see Esparraguera*, 981 F.3d at 1332 (noting that the Special

8

Counsel's 2018 final report "asserted that there was 'no credible
business reason' for the rotation plan, which was a 'dramatic departure
from past practice,'" and concluded "that the purpose of the plan was to
'provide [Esparraguera's preferred candidate] . . . an unfair advantage'"
(second alteration in original)).  The Special Counsel urged the
Department to take appropriate action against Esparraguera based on
these conclusions.  *See* JA 16, 17.

In early 2018, after receiving the Special Counsel's final report,
the Department conducted an internal investigation of the allegations,
including interviewing Esparraguera.  JA 18-19.  As a result of that
investigation, the Department issued Esparraguera a written
reprimand for "failure to exercise due diligence and exhibiting poor
supervisory leadership" in the hiring process.  JA 19.  Esparraguera
grieved the reprimand, but the Department confirmed the reprimand in
response.  *Id.*

Esparraguera's final performance rating for Fiscal Year 2017 was
delayed while the investigation proceeded.  JA 20.  A Performance
Review Board was subsequently convened to consider what rating to
recommend to the appointing official (then-Under Secretary of the Army

9

Ryan McCarthy).  JA 23.  A summary of the Special Counsel's report was provided to Esparraguera's rating official, who maintained his previous recommendation of an "Outstanding" rating, *id.*; *see* JA 20, as well as to the Performance Review Board.  The Board recommended that Esparraguera receive an "Unsatisfactory" rating.  JA 24.  After learning of the proposed rating, Esparraguera wrote to Under Secretary McCarthy and objected to the proposed rating.  JA 25.

On September 4, 2018, Under Secretary McCarthy notified Esparraguera that he was rating her "Unsatisfactory" and informed Esparraguera that she would be removed from the SES and placed into a GS-15 position because he had "lost confidence in [Esparraguera's] ability to successfully perform [her] duties as an Army Executive."  JA 25-27, 41.  Under Secretary McCarthy stated that he had considered the Performance Review Board's recommendation and agreed with the Special Counsel that Esparraguera "gave a specific candidate an unfair advantage by extending the timeline for . . . selection" in the Division Chief search, and that this action "completely undermine[d Esparraguera's] credibility to serve effectively in any senior leadership

10

page

position, let alone that of the Department of the Army's chief personnel attorney." JA 41.

Esparraguera subsequently received a copy of the February 2018 Special Counsel report and wrote a letter laying out her objections "at length" and asking Under Secretary McCarthy to reconsider his decision, but he denied that request. *Esparraguera*, 981 F.3d at 1333; JA 28-29. Esparraguera then requested an informal hearing under 5 U.S.C. § 3592(a). At that hearing—held in June 2019—Esparraguera raised a host of objections to her removal and submitted numerous exhibits. JA 30-31; *see* JA 60-93 (informal hearing transcript). At the conclusion of that hearing, the presiding official referred the record to the Department, the Office of Personnel Management, and the Office of Special Counsel, as prescribed by 5 C.F.R. § 1201.144(c). JA 95. None of those entities took action in response. JA 32.

## C.    Prior Proceedings

1. Esparraguera initially attempted to seek review of her removal from the SES in the Federal Circuit under provisions authorizing appeal of final decisions of the MSPB. 5 U.S.C. § 7703(a)(1), (b)(1)(A); 28 U.S.C. § 1295(a)(9). The Federal Circuit dismissed Esparraguera's

appeal, holding that the MSPB "cannot review the removal of an SES employee in an informal hearing under § 3592" and that the order referring the record was not a "'final order or decision' of the Board by which Ms. Esparraguera was 'adversely affected or aggrieved,'" as required for review in the Federal Circuit. *Esparraguera*, 981 F.3d at 1334, 1337. The Federal Circuit noted, however, the government's agreement that colorable constitutional claims could be raised in district court. *Id.* at 1338. Esparraguera sought a writ of certiorari from the Supreme Court, which was denied. *Esparraguera v. Department of the Army*, 142 S. Ct. 1415 (2022).

2. After the Federal Circuit's ruling, Esparraguera filed an action in district court asserting a claim under the Due Process Clause of the Fifth Amendment.[1] JA 34-36. She alleged that the process by which she was removed from the SES and placed into a GS position deprived her of a property interest in her SES position without due process. JA 34.

---

[1] Esparraguera also asserted a claim under the Administrative Procedure Act alleging that the MSPB had improperly failed to act by not issuing any further ruling after her informal hearing. JA 36-38. The district court rejected that claim, JA 100-01, 169-70, and Esparraguera does not renew it on appeal.

The government moved to dismiss, arguing (among other things) that Esparraguera had failed to exhaust her administrative remedies because she had not filed a complaint with the Office of Special Counsel. Esparraguera contended that filing such a complaint was not necessary to exhaust but submitted a complaint to the Special Counsel while the motion to dismiss was pending in district court.  JA 140, 147-57; *see* JA 155.  The Special Counsel did not seek relief on Esparraguera's behalf. The Special Counsel observed that Esparraguera's allegations that the Department "made procedural errors in issuing [her] 2017 performance rating" might "show a violation of 5 U.S.C. § 2302(b)(12)," which generally requires agencies to follow rules or regulations implementing merit system principles.  JA 158-59.  But the Special Counsel was not inclined to use its limited resources to further pursue the issue because the relief Esparraguera sought—"return to the SES"—might not follow from any action by the Special Counsel, given that the Department could issue the same rating again.  *Id.*; *see* JA 161-63, 164 (further correspondence between Esparraguera and the Special Counsel).

Esparraguera notified the district court of the Special Counsel's decision, No. 21-cv-421, Dkt. No. 26, and stated that she planned to file

13

a new suit raising "the same claims based on the same underlying events," but alleging facts related to her Special Counsel complaint, with the goal of consolidating the two cases. *Id.* at 2.

3.  Nearly a month later—and before Esparraguera had filed her promised new action—the district court granted the government's motion to dismiss Esparraguera's suit. *See* JA 5. As relevant here, the district court held that the comprehensive remedial scheme provided in the CSRA did not preclude the exercise of jurisdiction over Esparraguera's due process claim. The court concluded that the CSRA does not contain language "reflecting an 'unambiguous and comprehensive' effort to 'bar judicial review altogether'" for such claims. JA 102-03 (quoting *Lindahl*, 470 U.S. at 779-80). The district court further held that Esparraguera had exhausted her administrative remedies before bringing suit by seeking an informal hearing under 5 U.S.C. § 3592. JA 103.

On the merits, the district court held that Esparraguera's due process claim failed because "she has no protected property interest in her SES position." JA 103. The court observed that Esparraguera cited "no case in which a court determined that an employee had a protected

14

property interest in an SES position." JA 104. Instead, courts have generally "found that an employee had a property interest . . . only if the CSRA mandated that the employee could only be removed for cause or comparable reasons." *Id.* Section 3592(a)(2), by contrast, "is not an explicit 'for cause' provision," and contains "permissive language" that "hardly resembles other statutory language courts have interpreted as the functional equivalent of such a provision." *Id.* And the court observed that "[t]he structure and purpose of the SES also undermine" Esparraguera's arguments, insofar as the "permissive removal provision" matches Congress's desire to ensure that "the executive management of the Government of the United States is responsive to the needs, policies, and goals of the Nation and otherwise is of the highest quality." JA 105 n.2 (quoting 5 U.S.C. § 3131).

4. After the district court had entered judgment in the government's favor in her first suit, Esparraguera filed a second action. That action asserted the same facts and claims as her first suit but added allegations about her complaint to the Office of Special Counsel. *See* JA 140-41. The district court dismissed this suit as well, holding

15

(as relevant here) that Esparraguera's due process claim was barred by the doctrine of claim preclusion.  JA 168-69.[2]

Esparraguera appealed both judgments, and this Court consolidated the appeals.

## SUMMARY OF ARGUMENT

**I.**  Career SES employees exercise greater responsibility than other federal employees and have correspondingly greater pay and opportunities for performance awards and leave that are not available to others.  In exchange for those benefits, Congress made career SES employees "subject to legally unencumbered removals for poor performance," S. Rep. No. 98-351, at 3, with automatic placement into another civil service position.  Thus, career SES employees may be removed from the SES and placed into another civil service position "at any time for less than fully successful executive performance."  5 U.S.C.

---

[2] Because Esparraguera filed her second suit after filing a complaint with the Special Counsel and receiving action on that complaint, the government agrees that no further steps were necessary to exhaust her due process claim.  Given that this Court has before it a judgment entered in an action over which the district court undoubtedly had jurisdiction, we agree with Esparraguera (Br. 52-53) that this Court need not decide the exhaustion issue and may proceed directly to the merits of Esparraguera's due process claim.

§ 3592(a)(2).  Whether an employee's performance is "fully successful" is determined by a superior official considering a range of subjective factors, and that official's determination is not subject to review or appeal outside the agency.  *Id.* §§ 4312(d), 4313.

This structure—in which career SES employees hold their SES positions unless and until a superior official concludes their performance is less than ideal—does not create a property right to an SES position.  The removal language in § 3592(a)(2) is not an express for-cause provision, nor does it so substantially limit the agency's discretion to remove an SES employee from the SES as to be equivalent to a for-cause removal provision—unlike other provisions of the CSRA, including those governing the removal of an SES employee from government employment entirely.  As this Court has previously recognized, "Congress's manifest interest in flexibility," its "vesting of the decisionmaking authority in the agency head," and its use of broad criteria for assessing performance all demonstrate that a property interest is not created.  *Griffith v. Federal Labor Relations Auth.*, 842 F.2d 487, 497-98 (D.C. Cir. 1988).  And Esparraguera's contrary argument—that a property interest is created any time a statute

17

imposes any substantive limit on an agency's discretion—cannot be reconciled with this Court's precedent, which recognizes that a statute may "restrict[] management's unfettered discretion to discharge an employee at will" without thereby "creat[ing] a legitimate expectation of continued employment such as to establish a property interest." *Hall v. Ford*, 856 F.2d 255, 266 (D.C. Cir. 1988).

**II.**    Even if Esparraguera had a property interest in her SES position, the process she received would satisfy any applicable due process requirements.  In being removed from her SES position and placed into another civil service position, Esparraguera suffered no loss in basic pay.  The only benefits Esparraguera lost from her removal were contingent possibilities of future pay increases, future performance awards, or accumulation of additional paid leave.

The procedures Esparraguera received were more than adequate to address that limited interest, particularly in light of the government's countervailing interest in the swift removal of high-level executives who are not meeting performance standards.  Esparraguera received the informal hearing provided under the CSRA, and she does not allege that she lost any concrete benefits associated with her SES

18

position in advance of that hearing.  Before the hearing, she had notice of the basis of the Under Secretary's decision to remove her, as well as all the evidentiary material she identifies as relevant.  That hearing allowed her to "enter her arguments and evidence into the record for the Under Secretary's ultimate consideration," *Esparraguera*, 981 F.3d at 1337, and thus provided her "the opportunity to be heard 'at a meaningful time and in a meaningful manner,'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

Esparraguera's contrary arguments are largely premised on the mistaken premise that the deprivation she faces from being placed into another position with no loss in basic pay is constitutionally indistinguishable from the injury an employee experiences when being fired.  And Esparraguera's allegations that the Department failed to follow certain aspects of its internal procedures or otherwise failed to provide her with process before the informal hearing have no bearing here.  At most, they illustrate the substantial process afforded Esparraguera over and above the informal hearing process, and do not undermine the adequacy of the process she actually received.

## STANDARD OF REVIEW

This Court reviews a district court's decision granting a motion to dismiss *de novo*. *King v. Jackson*, 487 F.3d 970, 972 (D.C. Cir. 2007).

## ARGUMENT

## I.    Senior Executive Service Employees Have No Property Interest Protected under the Due Process Clause in Their Executive Positions

The district court correctly held that Esparraguera's due process claim fails because she has no protected property interest in her SES position. *See American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999) ("The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest . . . ."). A protected property interest arises where an individual has "a legitimate claim of entitlement" to a particular benefit, not merely a "unilateral expectation" or "abstract need or desire" for it. *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). That property interest must be the "product of some statute or other source of law," not the Constitution itself. *Garrow v. Gramm*, 856 F.2d 203, 206 (D.C. Cir. 1988).

In determining whether an entitlement exists in the context of federal employment, this Court has explained that the guiding inquiry

20

examines "the degree of discretion left to the administrator" to take or not take a particular action, and "whether, given the scope of discretion, the employee's interest should be classified as an entitlement." *Griffith v. Federal Labor Relations Auth.*, 842 F.2d 487, 496 (D.C. Cir. 1988). And in the field of removals, this Court has observed that "language qualifying discharge for 'cause' or for comparable reasons" reflects a sufficient limitation on discretion to create a property interest. *Garrow*, 856 F.2d at 206; *see id.* at 206-07 (observing that a statute may create a property interest if it "set[s] forth so comprehensive a list of prohibited reasons for termination that an employee would reasonably have as great an expectation of continued employment as one who knows he cannot be fired except for cause").

### A.    Government Executives Removable on the Basis of an Appointing Authority's Assessment of Their Performance Have No Entitlement to Their High-Ranking Government Positions

Career SES employees may be removed from the SES and placed into another civil service position "at any time for less than fully successful executive performance as determined under" specified performance review provisions that vest authority to assess performance in a higher-ranking official.  5 U.S.C. § 3592(a)(2).  In

other words, an SES employee holds her SES position unless and until her superior official believes her performance is less than ideal.

That sort of structure is not equivalent to a for-cause removal provision and does not create an entitlement. That result reflects the unique status of career SES employees, who occupy the highest echelons of government, exercise greater management responsibility, and have opportunities for correspondingly greater pay and benefits, but in exchange are subject to "legally unencumbered removals for poor performance." S. Rep. No. 98-351, at 3 (1984). No court in the decades since the enactment of the CSRA has held that SES employees have an entitlement to their SES positions, and the settled view of the MSPB for over 35 years is that they do not. *Berger v. Department of Energy*, 36 M.S.P.R. 48, 52 (1987).

1. The purpose of the SES is "to ensure that the executive management of the Government of the United States is responsive to the needs, policies, and goals of the Nation and otherwise is of the highest quality." 5 U.S.C. § 3131. Career SES employees manage agency components, supervise other employees, monitor and direct the accomplishment of agency goals, are "held accountable for the success of

one or more specific programs or projects," or "otherwise exercise[]
important policy-making, policy-determining, or other executive
functions." *Id.* § 3132(a)(2).

To compete with the private sector for talented leaders to
discharge these greater responsibilities, the SES has a "compensation
system . . . designed to attract and retain highly competent senior
executives." 5 U.S.C. § 3131(1).  Under that system, SES employees
enjoy advantages over federal employees under other pay systems:
higher levels of basic pay, the opportunity to receive performance
awards of between five and twenty percent of that pay, and the ability
to accumulate more paid leave.  *See Id.* §§ 5376(b)(1)(A), 5382(a); 5
C.F.R. § 534.403(a) (regulating pay); 5 U.S.C. § 5384(b)(2) (performance
awards); *Id.* § 6304(f) (leave).

A senior executive's "retention" and "tenure"—and thus the
employee's continued receipt of those advantages—"are contingent on
executive success which is measured on the basis of individual and
organizational performance." 5 U.S.C. § 3131(2).  In keeping with that
principle, career SES employees can be removed from their SES
positions and placed into another civil service position—as

23

Esparraguera was here—"at any time for less than fully successful executive performance as determined under subchapter II of chapter 43 of [Title 5]." *Id.* § 3592(a)(2).

The performance review provisions of Chapter 43, in turn, grant the agency head or other appointing official (or his designee) broad authority to rate a career SES employee's performance, taking into account a non-exhaustive list of factors. 5 U.S.C. § 4313. Although the agency head or other authority considers the views of others—particularly performance review boards established under the statute, *see id.* § 4314(c)—those recommendations are not binding on the rating official, and the performance rating an SES employee receives is not appealable to the MSPB or any other authority outside of the agency. *Id.* § 4312(d); *see Esparraguera v. Department of the Army*, 981 F.3d 1328, 1336 (Fed. Cir. 2020). An SES employee thus cannot claim an entitlement to continue to hold an SES position where they are subject to removal at any time based on their appointing authority's unreviewable assessment of their performance.

2. Other provisions of the CSRA reinforce this conclusion. As the district court noted, § 3592(a)(2)'s "less than fully successful executive

24

performance" standard "is not an explicit 'for cause' provision." JA 104.

Congress's omission of such express for-cause language is particularly

notable here because Congress used express for-cause language in other

parts of the CSRA precluding certain types of personnel actions—

including SES employees in other contexts.

For example, many non-SES employees may be removed, reduced

in grade, or suspended more than 14 days "only for such cause as will

promote the efficiency of the service," 5 U.S.C. § 7513(a)—a standard

this Court has held means that an employee "could not be dismissed

except for cause" and therefore has "a property interest protected by

due process," *Johnson v. United States*, 628 F.2d 187, 192, 194 (D.C.

Cir. 1980). When the CSRA was originally enacted, Congress applied

the same for-cause standard to the termination or suspension for more

than 14 days of a career SES employee. *See* Pub. L. No. 95-454, tit. IV,

§ 7543(a), 92 Stat. at 1174. Congress's employment of express for-cause

language protecting career SES employees against termination from

federal service strongly suggests that Congress did not create a for-

cause standard in simultaneously enacting the "less than fully

successful executive performance" standard that governs removal from

25

the SES and placement elsewhere in the civil service. *See Garrow*, 856 F.2d at 208 ("We can discern no reason why Congress should give back with one hand that which it has taken away with the other.").

In addition, as the district court recognized, the "less than fully successful executive performance" standard "hardly resembles other statutory language courts have interpreted as the functional equivalent of" a for-cause removal provision. JA 104. Provisions held to meet this standard made removal subject to a much higher threshold. For example, in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), the Supreme Court held that a property right was created by a statute that entitled public employees to retain their positions "during good behavior and efficient service," with removal prohibited except in cases of "misfeasance, malfeasance, or nonfeasance in office," among other enumerated circumstances. *Id.* at 538-39 (quotation omitted); *see id.* at 539 n.4 (quoting full text of provision); *see also McCammon v. Indiana Dep't of Fin. Inst.*, 973 F.2d 1348, 1350 (7th Cir. 1992) (holding that a property interest was created by a provision that allowed removal "for inefficiency, incompetency, or neglect of or failure to perform their duties" (emphasis omitted)).

26

Congress's subsequent treatment of career SES employees underscores the point. Through amendments in 1981 and 1984, Congress replaced the "efficiency of the service" standard that governed termination of career SES employees with the present-day standard, which provides that those employees can be terminated or suspended more than 14 days "only for misconduct, neglect of duty, malfeasance, or failure to accept a directed reassignment or to accompany a position in a transfer of function." 5 U.S.C. § 7543(a); *see* Pub. L. No. 97-35, § 1704(d)(2), 95 Stat. 357, 758 (1981); Pub. L. No. 98-615, tit. III, § 304(c), 98 Stat. 3195, 3219 (1984). Congress's deliberate use of language equivalent to for-cause protections for terminations in these provisions underscores the absence of such language for performance-based removal from the SES into a different civil service position.

The same principle is reflected in the procedures Congress established to protect property interests elsewhere in the CSRA. For employees who may be terminated under the for-cause or equivalent provisions discussed above, Congress has provided pre- and post-termination process, including review before the MSPB—the very processes Esparraguera now contends she is owed. *See* 5 U.S.C.

27

§§ 7513, 7543, 7701.  Congress did not provide those same procedures for career SES employees removed from SES positions and placed into a different civil service position.  *Id.* § 3592.  Esparraguera provides no reason to believe that Congress created a property interest in her position while simultaneously refusing to extend the same protections it provided for other property interests.

3.  Congress has also repeatedly underscored the lack of an entitlement to SES positions.  In creating the SES Congress emphasized that it intended to "provide the flexibility needed by agencies to recruit and retain the highly competent and qualified executives needed to provide more effective management of agencies and their functions."  Pub. L. No. 95-454, § 3(6), 92 Stat. at 1113; *see Esparraguera*, 981 F.3d at 1330.  The SES was designed to replace a system "so rigid that it fail[ed] to provide agency heads with sufficient flexibility" and where "neither the Congress nor the President [had] effective control over the size and distribution of executive level employees," with Congress emphasizing that the SES was designed to mirror "the kind of system that has been highly successful in the private sector."  S. Rep. No. 95-969, at 10-11.  As a result, the SES was

28

designed such that "[t]hose executives who cannot or do not live up to [SES] standards will be removed, but their rights will be protected" because in "performance cases they can revert to the regular civil service as a GS-15." *Id.* at 11.

As originally enacted the CSRA called for Congress to review the newly-created SES five years after its creation. Pub. L. No. 95-454, § 415(b), 92 Stat. at 1179. During that time, Congress repeatedly reemphasized its intent to create a flexible corps of high-ranking executives. In 1981, Congress passed a package of amendments to the SES (including rephrasing the standard for terminations in § 7543(a)), and restated its intent "to provide an elite corps of executives[] . . . characterized by excellence and mobility" that would "give up certain procedural protections in return for opportunities for increased responsibilities, reassignments, transfers, and bonuses." H. Rep. No. 97-158, vol. III, at 49. And in making significant changes to the SES during the five-year review in 1984, Congress reiterated its desire to create "a fluid, highly competitive group of executives who could receive substantial awards and bonuses for good performance while being subject to legally unencumbered removals for poor performance." S.

29

Rep. No. 98-351, at 3.  As the district court correctly recognized, reading § 3592(a)(2) to confer an entitlement to high-ranking government executive positions would thus be inconsistent with the basic purposes of the SES.  JA 105 n.2.

4.  This Court has previously recognized that a performance-based inquiry that leaves substantial discretion to the ultimate decisionmaker does not create a property interest in the context of federal employment, relying on many of the same factors present here.  In *Griffith v. Federal Labor Relations Authority*, 842 F.2d 487 (D.C. Cir. 1988), this Court held that a statute providing that federal employees "shall" receive within-grade pay increases if "the work of the employee . . . is of an acceptable level of competence as determined by the head of the agency," 5 U.S.C. § 5335(a)(B) (1982), did not create a property interest in the pay increase.  In concluding that no property interest was created under that statute, this Court relied on cases considering factors such as "the vagueness of the controlling term ('acceptable')," "Congress's specific vesting of the decisionmaking authority in the agency head," the nature of the decision (such as its "similarity to a promotion" as opposed to a termination), and "Congress's manifest interest in

30

flexibility," including "Congress's references to the private sector" in legislative history. *Griffith*, 842 F.2d at 497-98, 501.

Those same factors support the conclusion that no entitlement exists here: as discussed in detail above, Congress expressly sought flexibility modeled on the private sector in removing these high-ranking employees, granted discretion to appointing authorities to determine the quality of an employee's performance based on broad and non-exhaustive criteria, and ensured that the decision was less significant than a termination or demotion by guaranteeing the SES employee placement in another job with no loss in basic pay.

### B. Esparraguera Identifies No Statutory Language Creating an Entitlement to Hold a High-Ranking Executive Position

In Esparraguera's view, none of this structure and precedent matters. She argues that a property interest is created any time there are "substantive limits on the government's ability to displace her" from her position, equating any such substantive limitation with a for-cause removal standard. Br. 28. Thus, she contends, § 3592(a)(2)'s "less than fully successful executive performance" standard "limits the

31

government's discretion to remove career appointees from the SES" and is therefore equivalent to a for-cause removal provision.  Br. 29-30.

That view is mistaken on multiple levels.  To begin, this Court has squarely rejected the view that the mere existence of "substantive limits" on the government's ability to fire or demote an employee automatically creates a property interest, explaining that a provision may "restrict[] management's unfettered discretion to discharge an employee at will" without thereby "creat[ing] a legitimate expectation of continued employment such as to establish a property interest." *Hall v. Ford*, 856 F.2d 255, 266 (D.C. Cir. 1988).  The CSRA, for example, generally bars any personnel action that is based on certain prohibited personnel practices, such as actions based on an employee's political affiliation or activities, whistleblowing actions, exercise of procedural rights, or off-duty conduct that does not affect job performance.  5 U.S.C. § 2302(b).  In *Garrow v. Gramm*, this Court explained that even though these provisions limit an agency's authority to fire an employee (even one otherwise employed at will), they do not "even come close" to creating a legitimate "expectation of continued employment."  856 F.2d at 206-07; *see id.* at 207 (explaining that "while § 2302(b)(10) provides

32

extensive protection from discrimination of all types, where that
discrimination is unrelated to on-the-job conduct and performance, it
does not, as a result of those protections create a property interest").
And that approach is entirely consistent with due process principles
generally, which recognize that whether a statute creates a
"substantive interest" is a distinct question from whether that interest
"rises to the level of a 'legitimate claim of entitlement' protected by the
Due Process Clause." *Memphis Light, Gas & Water Div. v. Craft*, 436
U.S. 1, 9 (1978).

  Nor have other courts adopted the approach that Esparraguera
posits.  The two out-of-circuit cases she cites for the premise that
"substantive" restrictions automatically create a property interest both
use that term in making the well-settled point that a property interest
cannot be inferred from a government's decision to establish procedural
requirements.  *See Miyler v. Village of E. Galesburg*, 512 F.3d 896, 898
(7th Cir. 2008) (explaining that "[p]rocedural guarantees do not
establish a property interest" as opposed to "substantive criteria
limiting the state's discretion" (quoting *Cain v. Larson*, 879 F.2d 1424,
1426 (7th Cir. 1989)); *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1254

(10th Cir. 1998) (contrasting "substantive restrictions on the discretion to demote an employee" with "[p]rocedural detail in a statute or regulation," which does not "establish a protected property interest"); *see also Griffith*, 842 F.2d at 495 ("[L]egislative provision of procedural safeguards cannot in itself create a property interest . . . ."). Those cases do not address what sort of substantive criteria create a property interest—other than to link that standard to a for-cause removal provision. *Miyler*, 512 F.3d at 898 (discussing "substantive criteria limiting the state's discretion, as for instance in a requirement that employees can only be fired 'for cause'"); *Hennigh*, 155 F.3d at 1254 (discussing "substantive restrictions . . . such as providing that discipline may only be imposed for cause"). Nor was such consideration necessary: *Hennigh* involved an express for-cause removal provision, *see* 155 F.3d at 1254 (limiting actions to "for cause shown"), while in *Miyler* no statute or ordinance limited removal discretion in any way, *see* 512 F.3d at 898-99.

The case Esparraguera relies on most heavily—*Wheaton v. Webb-Petett*, 931 F.2d 613 (9th Cir. 1991)—illustrates the same points. *Wheaton* involved an employee in Oregon's "management service" who

34

was removed from that service and placed into a position in the state's "classified service." *Id.* at 615. In determining that the employee had a property interest in his management service position, the Ninth Circuit examined a range of factors. The court noted that an employee could not be removed from the management service "unless 'the employee is unable or unwilling to fully and faithfully perform the duties of the position satisfactorily,'" comparing that language to the language applicable to other state employees. *Id.* at 616-17. The court further observed that management service employees could appeal a transfer to the classified service to the state's equivalent of the MSPB, which "must give the employee a remedy if . . . it 'finds that the action was not taken in *good faith for cause*.'" *Id.* at 617 (emphasis in original).

Esparraguera is thus wrong to read *Wheaton* to reflect a rule that a property interest is created any time removal may occur "only for performance reasons." Br. 31. Instead, the Ninth Circuit took a similar approach to this Court, assessing whether the position was "more protected than not" by examining the whole statutory scheme, including the express review for cause in state administrative proceedings. *Wheaton*, 931 F.2d at 616.

35

These same errors undermine Esparraguera's attempts to derive support from other provisions of the CSRA. She notes the provision applicable to limited emergency, limited term, and noncareer SES employees, who may be removed from the SES "at any time." 5 U.S.C. § 3592(c); Br. 34. But as discussed, this Court has already rejected the premise that any limitation on discretion would create a property interest, so the fact that some employees enjoy even less protection is of little relevance. *See Hall*, 856 F.2d at 266; *Garrow*, 856 F.2d at 206-07. Indeed, those employees are not protected even by the limitations on prohibited personnel practices this Court concluded do not create a property interest in *Garrow*. *See* 5 U.S.C. § 3132(a)(5), (6), (7) (defining these positions); *id.* § 2302(a)(2)(B) (defining "covered position" for purposes of prohibited personnel practices to include only career SES positions).

Esparraguera's discussion of probationary career SES employees (Br. 33) highlights the flaws in her analysis. She observes that such employees can be removed during their probationary period, 5 U.S.C. § 3592(a)(1), and contends that this renders those employees "at will," in contrast to non-probationary career SES employees. Br. 33. But

probationary career SES employees—like the employee in *Garrow*—are protected during their probationary period from personnel actions based on a prohibited personnel practice, and thus are not "at will" in the totally unfettered sense Esparraguera posits. *See* 5 U.S.C. § 2302(a)(2)(B); *see also Acting Special Counsel v. U.S. Customs Serv.*, 31 M.S.P.R. 342, 344-47 (1986) (granting a stay of removal of an SES employee who was a reemployed annuitant "serv[ing] at the will of the appointing authority," 5 U.S.C. § 3323(b)(1), and explaining that "[w]hether an employee has tenure rights is not determinative of whether an employee is in a covered position under 5 U.S.C. § 2302(a)(2)(B)").

Esparraguera also garners no support from 5 U.S.C. § 4303, which provides that certain non-SES employees may be "reduce[d] in grade or remove[d] . . . for unacceptable performance," or the Federal Circuit's decision in *Stone v. Federal Deposit Insurance Corp.*, 179 F.3d 1368, 1375 (Fed. Cir. 1999), which states that a federal employee who could only be removed "for cause or unacceptable performance" has a property interest in continued employment. *See* Br. 30-31, 35-36. *Stone* itself involved a removal for misconduct rather than unacceptable

37

performance, *see* 179 F.3d at 1372, and this Court has never held that the "unacceptable performance" provision creates a property interest, *see Garrow*, 856 F.2d at 209.  That question is largely academic, as Congress has provided extensive process around such actions, which result in either termination from federal employment or a reduction in pay.  5 U.S.C. §§ 4303(b)-(e), 7701(c)(1)(A).

But even if that language creates a property interest, it would be because the "unacceptable performance" standard is a high one that "is not a synonym for generally poor performance or inefficiency," *Lovshin v. Department of the Navy*, 767 F.2d 826, 834 (Fed. Cir. 1985) (en banc), and thus would constrain an agency's discretion far more than the "less than fully successful executive performance" language of § 3592(a)(2).  Moreover, the Federal Circuit has held that the CSRA requires an agency to prove by substantial evidence before the MSPB that an employee was performing unacceptably and continued to perform unacceptably after being placed on a performance improvement plan.  *Santos v. NASA*, 990 F.3d 1355, 1363 (Fed. Cir. 2021).  In contrast, as discussed, an appointing official's assessment of a career SES

38

employee's performance is not subject to appeal or review outside the

agency, much less to demonstration by any particular standard of proof.

## II.    Even if Esparraguera Had a Property Interest in Her Executive Position, She Received Adequate Process

Even if 5 U.S.C. § 3592(a)(2) created a property interest in

Esparraguera's SES position, the procedures under which she was

removed from that position were constitutionally adequate.  Due

process "is not a technical conception with a fixed content unrelated to

time, place and circumstances," but is instead "flexible and calls for

such procedural protections as the particular situation demands."

*Gilbert v. Homar*, 520 U.S. 924, 930 (1997) (quotation marks omitted).

"To determine what process is constitutionally due," courts balance

"three distinct factors," namely "the private interest that will be

affected by the official action"; the "risk of an erroneous deprivation of

such interest through the procedures used" and the "probable value, if

any, of additional or substitute procedural safeguards"; and "the

Government's interest."  *Id.* at 931-32 (quoting *Mathews v. Eldridge*,

424 U.S. 319, 335 (1976)).  The fundamental question is whether the

procedures in place provide "the opportunity to be heard 'at a

39

meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

Esparraguera argues at length that the Constitution requires that her performance-based removal from the SES and placement into a GS-15 position be subject to the same set of processes typically required when a public employer terminates an employee. Br. 42-47. But career SES employees like Esparraguera are simply moved to another position with no loss in basic pay. The procedures for contesting and reviewing such a transfer are calibrated to that situation. For performance-based removals, the CSRA provides a single process that takes place before any concrete deprivation of pay or other benefits occurs. In advance of that hearing, Esparraguera received notice of the appointing official's basis for removing her, as well as all the documentation she identifies as relevant to that decision. At the hearing, Esparraguera was permitted to present arguments related to her performance-based removal, including the same arguments she now raises about the proper interpretation of the 2018 Special Counsel report and her own actions. In short, Esparraguera received a meaningful opportunity to be heard

at a meaningful time, even though her arguments did not ultimately lead the decisionmaker to reconsider.

**A.** If Esparraguera has any property interest in her SES position, that interest would attach to the pay and other benefits that accompany that position. Her basic pay remained unchanged when she was removed from her SES position and placed into a GS-15 position; to the extent her basic pay is affected, it is only in the possibility of future pay increases. *See* 5 U.S.C. § 3594(c)(2) (providing that future increases in basic pay are prorated until the employee's basic pay matches the basic pay for the position of placement). Similarly, whether Esparraguera would have received performance awards or taken advantage of the higher cap on accrued annual leave is unclear, as those benefits are contingent on Esparraguera's own actions, her appointing authority's judgment, or both. *See id.* § 6304(f) (allowing SES employees to accrue up to 90 days of annual leave); *id.* § 4314(b)(2) (providing that an SES employee rated "fully successful" "may be given a performance award"). Although Esparraguera contends generally that she did not receive adequate, pre-deprivation process, Br. 42, her complaints do not allege that she lost any of these benefits before her informal hearing, much

41

less that she felt any effects from any on-paper loss before that hearing or otherwise experienced harm that could not be fully addressed after her hearing.

Put another way, Esparraguera's "private interest"—an interest in contingent possibilities of future pay increases, greater leave, or performance awards—is relatively insubstantial for purposes of the due process balance. *See Mathews*, 424 U.S. at 341 (explaining that "the degree of potential deprivation that may be created by a particular decision is a factor to be considered in assessing the validity of any administrative decisionmaking process"). It bears no resemblance to the termination cases on which Esparraguera extensively relies,[3] given the comparative "severity of depriving a person of the means of livelihood," *Loudermill*, 470 U.S. at 543, or even to demotion or suspension-without-pay cases, where employees suffer an immediate loss in income, *see Gilbert*, 520 U.S. at 932 (noting that "the lost income

---

[3] The bulk of employment due-process cases Esparraguera cites involve terminations. *See, e.g.*, *Loudermill*, 470 U.S. at 538; *Locurto v. Safir*, 264 F.3d 154, 160-61 (2d Cir. 2001); *Walker v. City of Berkeley*, 951 F.2d 182, 184 (9th Cir. 1991); *Carter v. Western Reserve Psychiatric Habilitation Ctr.*, 767 F.2d 270, 272 (6th Cir. 1985) (per curiam); *Benavidez v. City of Albuquerque*, 101 F.3d 620, 626 (10th Cir. 1996).

[from a suspension without pay] is relatively insubstantial (compared with termination), and fringe benefits such as health and life insurance are often not affected at all"); *Ciambriello v. County of Nassau*, 292 F.3d 307, 320 (2d Cir. 2002) (stating that "a reduction in salary and benefits" is "undoubtedly less significant than a public employee's interest in not being dismissed altogether").

On the other side of the ledger, Congress has recognized the government's substantial interest in maintaining a flexible and highly accountable corps of high-level executives.  That interest, as discussed above, drove Congress to create the SES as group of employees who traded the extensive procedures otherwise available to federal employees for greater responsibilities and opportunities for compensation, while making their "retention[] and tenure . . . contingent on executive success."  5 U.S.C. § 3131(2); *see supra* pp. 22-24, 28-30.  The nature and importance of that flexibility is particularly apparent here, where the responsible official determined that he did not have confidence in Esparraguera continuing to hold a position as "the Department of the Army's chief personnel attorney" given her conduct in the Division Chief hiring process.  JA 41.  Congress reasonably

43

recognized that the government's interest in ensuring that the highest-level executives are held to the highest standards of performance merited swift removal, rather than months or years of protracted disputes over the quality of an executive's leadership or the degree to which superior officials should have confidence in that executive given past performance and their current role.

The CSRA's informal hearing process appropriately balances these interests and the costs of further procedures with the risk of erroneous deprivation. That process serves "as a ministerial record-developing adjunct to the Under Secretary"—the official tasked with reviewing Esparraguera's performance—and enabled "Esparraguera to enter her arguments and evidence into the record for the Under Secretary's ultimate consideration." *Esparraguera*, 981 F.3d at 1337. Esparraguera does not contend that she had insufficient notice of the Under Secretary's basis for his decision (or any other matter) at that stage or that she was precluded from advancing any argument that she believes the Under Secretary should have considered. Whatever risk of error remained after this process would be constitutionally tolerable in light of the relatively minimal interest Esparraguera would have in

44

retention of her SES position and Congress's corresponding interest in swift removals of underperforming executives. *See, e.g.*, *Goss v. Lopez*, 419 U.S. 565, 579 (1975) (explaining that "the timing and content of the notice and the nature of the hearing will depend on appropriate accommodation of the competing interests involved").

**B.**  1.  Esparraguera's contrary arguments fail.  She articulates a different "private interest" unconnected with any concrete benefit associated with her SES position, asserting that she has an interest in the retention of her SES position because it represents "the culmination of decades of dedicated, exemplary federal service."  Br. 51; *accord* Br. 40 (arguing that Esparraguera had an interest "apart from any impact on her salary").

But this Court has held that "'an entitlement must have "some ascertainable monetary value" in order to "constitute a 'property' interest" for due-process purposes.'"  *Delaware Riverkeeper Network v. FERC*, 895 F.3d 102, 109 (D.C. Cir. 2018), *overruled in part on other grounds by Alleghany Def. Project v. FERC*, 964 F.3d 1, 18 (D.C. Cir. 2020) (en banc).  Esparraguera cites no case holding that the psychological satisfaction of holding a position is a property interest.

45

Indeed, courts have routinely rejected related suggestions that an employee has any property interest in a particular title or set of job duties or responsibilities untethered to pay or other benefits. *See, e.g.*, *Fields v. Durham*, 909 F.2d 94, 98 (4th Cir. 1990); *Anglemyer v. Hamilton Cty. Hosp.*, 58 F.3d 533, 539 (10th Cir. 1995); *Maples v. Martin*, 858 F.2d 1546, 1550 (11th Cir. 1988). That principle applies with even greater force here, where SES employees are expressly subject to transfer or reassignment. 5 U.S.C. §§ 3131(5), 3395. The few appellate cases short of termination that Esparraguera cites likewise involve situations in which the employee immediately lost pay or other benefits. *Nguyen v. Department of Homeland Sec.*, 737 F.3d 711, 712 (Fed. Cir. 2013) (demotion from GS-12 to GS-7); *Ciambriello*, 292 F.3d at 312 (plaintiff "suffered a demotion in grade and a reduction in salary and benefits"); *Acosta-Orozco v. Rodriguez-de-Rivera*, 132 F.3d 97, 100 (1st Cir. 1997) ("[E]ach of the plaintiffs suffered a loss of salary . . . .").

In all events, even if the psychic benefits flowing from her SES position were properly considered as part of Esparraguera's "private interest," she appears to recognize they would be entitled to little weight. *See* Br. 51 (contending that interest is not "so insubstantial as

46

to warrant no process at all").  Those benefits thus would not materially alter the due process calculus.

2.  Esparraguera devotes much of her brief to identifying alleged errors in the process that led to the Performance Review Board's recommendation to the Under Secretary, contending that she and her supervisor did not have the opportunity to provide comments on the recommendation, that she was not given access to the Special Counsel's 2018 report before the Under Secretary's letter, and that she did not receive the results of the Department's separate investigation until after the Under Secretary's letter.  Br. 1-2, 11-12, 13-15, 27-28, 41-46, 48-49.

Those allegations have little bearing here.  The relevant question is whether the process Esparraguera actually received comported with due process.  And it is well-established that an agency's failure to follow all of its self-imposed procedures does not automatically violate due process.  *Tate v. District of Columbia*, 627 F.3d 904, 908 (D.C. Cir. 2010); *accord, e.g.*, *Doe v. Miami Univ.*, 882 F.3d 579, 603 (6th Cir. 2018); *Torres-Rosado v. Rotger-Sabat*, 335 F.3d 1, 10 (1st Cir. 2003); *McDarby v. Dinkins*, 907 F.2d 1334, 1337 (2d Cir. 1990); *Goodrich v.*

47

*Newport News Sch. Bd.*, 743 F.2d 225, 227 (4th Cir. 1984); *see* Br. 50 (acknowledging that the process due is not determined by the statutory procedures).

Here, as discussed, the informal hearing process provided constitutionally adequate procedures. There is no dispute that by the time of that hearing, Esparraguera had received all of the material that she alleges was withheld from her. And she was able to present her arguments at that hearing before any loss of pay (or, apparently, any other benefits associated with her SES position).

To the extent the alleged procedural failings Esparraguera identifies are relevant at all, they only underscore the host of additional procedures Esparraguera received over and above the informal hearing process. For example, Esparraguera received a copy of the Special Counsel's 2016 summary of findings shortly after it was provided to the Department. JA 16. The views of her supervising official were solicited twice—once in her initial rating, and again when her supervising official was provided with the same summary of the Special Counsel's 2018 report that the performance review board received. JA 20, 23. She also conveyed her views to the Under Secretary twice—once after

48

learning that the Board had made a proposed recommendation (and after she received the summary of the 2018 Special Counsel report), and a second time in seeking reconsideration of the Under Secretary's decision.  JA 25, 28.  In that second letter, she "explained at length her disagreement with the [Performance Review Board], with [the Special Counsel]'s account, and with the Army's summary of the findings, as well as her subjective intent in devising the rotation plan." *Esparraguera*, 981 F.3d at 1333; *see* JA 28.[4]  That the Under Secretary denied reconsideration does not mean that those procedures were not available to her.  Esparraguera's allegations of errors in that process do not undermine the adequacy of the informal hearing, much less the adequacy of the process as a whole.

3.  Esparraguera's more general arguments likewise fail.  Her comparison of the process available here to the process applied where a

---

[4] These letters, like other documents referenced in Esparraguera's complaints, are not attached to her complaints.  Although the government does not believe that review of these materials is necessary to resolve these appeals, we note that many referenced documents are part of the joint appendix prepared in Esparraguera's Federal Circuit appeal, including the 2016 Special Counsel summary of findings, the 2018 Special Counsel report, and Esparraguera's two letters to Under Secretary McCarthy.  *See* Joint Appendix, *Esparraguera v. Department of the Army*, No. 19-2293 (Fed. Cir.).

career SES employee is accused of misconduct (Br. 51) illustrates her failure to grapple with the relative significance of the interests at stake. When an employee is accused of "misconduct" or "malfeasance," the sanction is either termination or a lengthy period without pay.  5 U.S.C. § 7543(a).  In addition, a removal or suspension on that basis could implicate an employee's liberty interests.  Congress's provision of the "full panoply of post-removal process" in those circumstances, Br. 51, thus strikes an appropriate balance between the greater private interests at stake in such cases with the government's distinct interests in terminating or withholding pay from employees who have engaged in misconduct.  A removal on performance grounds, by contrast, "does not carry with it the sort of opprobrium sufficient to constitute a deprivation of liberty," *Harrison v. Bowen*, 815 F.2d 1505, 1518 (D.C. Cir. 1987); *accord Esparraguera*, 981 F.3d at 1333 n.4, and, as discussed, Esparraguera suffered no loss in basic pay upon her removal. As with Esparraguera's citation of termination cases in general, the processes applicable where greater private interests are involved cannot be transplanted to the context of a removal from the SES with no loss in basic pay.

50

Esparraguera likewise errs in arguing that the government's interest in "protect[ing] senior executives from arbitrary or capricious actions," 5 U.S.C. § 3131(7), necessarily counsels greater process. Br. 50. To say that career SES employees should be protected from arbitrary action does not answer the question of whether the process Esparraguera received was constitutionally adequate given Congress's other objectives in creating the SES and the limited effects flowing from a performance-based removal from the SES. And Congress ensured that the government would not lose the benefit of the "invaluable institutional knowledge and leadership skills" of career SES employees, *id.*, by providing those employees guaranteed placement in another civil service position.

# CONCLUSION

For the foregoing reasons, the judgments of the district court should be affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
  *Principal Deputy Assistant*
  *Attorney General*

CHARLES W. SCARBOROUGH

 */s/ Brad Hinshelwood*
BRAD HINSHELWOOD
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7256*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-7823*
  *bradley.a.hinshelwood@usdoj.gov*

June 2023

52

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 9,806 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.


*/s/ Brad Hinshelwood*
Brad Hinshelwood

**ADDENDUM**

# TABLE OF CONTENTS

5 U.S.C. § 3131 ................................................................................. A1

5 U.S.C. § 3592 ................................................................................. A3

5 U.S.C. §§ 4312-4314.................................................................... A5

5 U.S.C. § 7543 ................................................................................. A9

5 C.F.R. §§ 1201.143-.145................................................................ A10

**5 U.S.C. § 3131**

**§ 3131. The Senior Executive Service**

It is the purpose of this subchapter to establish a Senior Executive Service to ensure that the executive management of the Government of the United States is responsive to the needs, policies, and goals of the Nation and otherwise is of the highest quality. The Senior Executive Service shall be administered so as to—

(1) provide for a compensation system, including salaries, benefits, and incentives, and for other conditions of employment, designed to attract and retain highly competent senior executives;

(2) ensure that compensation, retention, and tenure are contingent on executive success which is measured on the basis of individual and organizational performance (including such factors as improvements in efficiency, productivity, quality of work or service, cost efficiency, and timeliness of performance and success in meeting equal employment opportunity goals);

(3) assure that senior executives are accountable and responsible for the effectiveness and productivity of employees under them;

(4) recognize exceptional accomplishment;

(5) enable the head of an agency to reassign senior executives to best accomplish the agency's mission;

(6) provide for severance pay, early retirement, and placement assistance for senior executives who are removed from the Senior Executive Service for nondisciplinary reasons;

(7) protect senior executives from arbitrary or capricious actions;

(8) provide for program continuity and policy advocacy in the management of public programs;

(9) maintain a merit personnel system free of prohibited personnel practices;

(10) ensure accountability for honest, economical, and efficient Government;

A1

(11) ensure compliance with all applicable civil service laws, rules, and regulations, including those related to equal employment opportunity, political activity, and conflicts of interest;

(12) provide for the initial and continuing systematic development of highly competent senior executives;

(13) provide for an executive system which is guided by the public interest and free from improper political interference; and

(14) appoint career executives to fill Senior Executive Service positions to the extent practicable, consistent with the effective and efficient implementation of agency policies and responsibilities.

**5 U.S.C. § 3592**

**§ 3592. Removal from the Senior Executive Service**

(a) Except as provided in subsection (b) of this section, a career appointee may be removed from the Senior Executive Service to a civil service position outside of the Senior Executive Service—

    (1) during the 1-year period of probation under section 3393(d) of this title, or

    (2) at any time for less than fully successful executive performance as determined under subchapter II of chapter 43 of this title,

        except that in the case of a removal under paragraph (2) of this subsection the career appointee shall, at least 15 days before the removal, be entitled, upon request, to an informal hearing before an official designated by the Merit Systems Protection Board at which the career appointee may appear and present arguments, but such hearing shall not give the career appointee the right to initiate an action with the Board under section 7701 of this title, nor need the removal action be delayed as a result of the granting of such hearing.

(b)

    (1) Except as provided in paragraph (2) of this subsection, a career appointee in an agency may not be involuntarily removed—

        (A) within 120 days after an appointment of the head of the agency; or

        (B) within 120 days after the appointment in the agency of the career appointee's most immediate supervisor who—

          (i)is a noncareer appointee; and

          (ii)has the authority to remove the career appointee.

    (2) Paragraph (1) of this subsection does not apply with respect to—

        (A) any removal under section 4314(b)(3) of this title; or

        (B) any disciplinary action initiated before an appointment referred to in paragraph (1) of this subsection.

A3

(c) A limited emergency appointee, limited term appointee, or noncareer appointee may be removed from the service at any time.

**5 U.S.C. §§ 4312-4314**

**§ 4312. Senior Executive Service Performance Appraisal Systems**

(a) Each agency shall, in accordance with standards established by the Office of Personnel Management, develop one or more performance appraisal systems designed to—

(1) permit the accurate evaluation of performance in any position on the basis of criteria which are related to the position and which specify the critical elements of the position;

(2) provide for systematic appraisals of performance of senior executives;

(3) encourage excellence in performance by senior executives; and

(4) provide a basis for making eligibility determinations for retention in the Senior Executive Service and for Senior Executive Service performance awards.

(b) Each performance appraisal system established by an agency under subsection (a) of this section shall provide—

(1) that, on or before the beginning of each rating period, performance requirements for each senior executive in the agency are established in consultation with the senior executive and communicated to the senior executive;

(2) that written appraisals of performance are based on the individual and organizational performance requirements established for the rating period involved; and

(3) that each senior executive in the agency is provided a copy of the appraisal and rating under section 4314 of this title and is given an opportunity to respond in writing and have the rating reviewed by an employee, or (with the consent of the senior executive) a commissioned officer in the uniformed services serving on active duty, in a higher level in the agency before the rating becomes final.

A5

(c)

    (1) The Office shall review each agency's performance appraisal system under this section, and determine whether the agency performance appraisal system meets the requirements of this subchapter.

    (2) The Comptroller General shall from time to time review performance appraisal systems under this section to determine the extent to which any such system meets the requirements under this subchapter and shall periodically report its findings to the Office and to each House of the Congress.

    (3) If the Office determines that an agency performance appraisal system does not meet the requirements under this subchapter (including regulations prescribed under section 4315), the agency shall take such corrective action as may be required by the Office.

(d) A senior executive may not appeal any appraisal and rating under any performance appraisal system under this section.

## § 4313. Criteria for performance appraisals

Appraisals of performance in the Senior Executive Service shall be based on both individual and organizational performance, taking into account such factors as—

    (1) improvements in efficiency, productivity, and quality of work or service, including any significant reduction in paperwork;

    (2) cost efficiency;

    (3) timeliness of performance;

    (4) other indications of the effectiveness, productivity, and performance quality of the employees for whom the senior executive is responsible;

    (5) meeting affirmative action goals, achievement of equal employment opportunity requirements, and compliance with the merit systems principles set forth under section 2301 of this title; and

    (6) protecting whistleblowers, as described in section 4302(b)(2).

## § 4314. Ratings for performance appraisals

(a) Each performance appraisal system shall provide for annual summary ratings of levels of performance as follows:

(1) one or more fully successful levels,

(2) a minimally satisfactory level, and

(3) an unsatisfactory level.

(b) Each performance appraisal system shall provide that—

(1) any appraisal and any rating under such system—

(A) are made only after review and evaluation by a performance review board established under subsection (c) of this section;

(B) are conducted at least annually, subject to the limitation of subsection (c)(3) of this section;

(C) in the case of a career appointee, may not be made within 120 days after the beginning of a new Presidential administration; and

(D) are based on performance during a performance appraisal period the duration of which shall be determined under guidelines established by the Office of Personnel Management, but which may be terminated in any case in which the agency making an appraisal determines that an adequate basis exists on which to appraise and rate the senior executive's performance;

(2) any career appointee receiving a rating at any of the fully successful levels under subsection (a)(1) of this section may be given a performance award under section 5384 of this title;

(3) any senior executive receiving an unsatisfactory rating under subsection (a)(3) of this section shall be reassigned or transferred within the Senior Executive Service, or removed from the Senior Executive Service, but any senior executive who receives 2 unsatisfactory ratings in any period of 5 consecutive years shall be removed from the Senior Executive Service; and

(4) any senior executive who twice in any period of 3 consecutive years receives less than fully successful ratings shall be removed from the Senior Executive Service.

(c)

(1) Each agency shall establish, in accordance with regulations prescribed by the Office, one or more performance review boards, as appropriate. It is the function of the boards to make recommendations to the appropriate appointing authority of the agency relating to the performance of senior executives in the agency.

(2) The supervising official of the senior executive shall provide to the performance review board, an initial appraisal of the senior executive's performance. Before making any recommendation with respect to the senior executive, the board shall review any response by the senior executive to the initial appraisal and conduct such further review as the board finds necessary.

(3) Performance appraisals under this subchapter with respect to any senior executive shall be made by the appointing authority only after considering the recommendations by the performance review board with respect to such senior executive under paragraph (1) of this subsection.

(4) Members of performance review boards shall be appointed in such a manner as to assure consistency, stability, and objectivity in performance appraisal. Notice of the appointment of an individual to serve as a member shall be published in the Federal Register.

(5) In the case of an appraisal of a career appointee, more than one-half of the members of the performance review board shall consist of career appointees. The requirement of the preceding sentence shall not apply in any case in which the Office determines that there exists an insufficient number of career appointees available to comply with the requirement.

**5 U.S.C. § 7543**

## § 7543. Cause and procedure

(a) Under regulations prescribed by the Office of Personnel Management, an agency may take an action covered by this subchapter against an employee only for misconduct, neglect of duty, malfeasance, or failure to accept a directed reassignment or to accompany a position in a transfer of function.

(b) An employee against whom an action covered by this subchapter is proposed is entitled to—

(1) at least 30 days' advance written notice, unless there is reasonable cause to believe that the employee has committed a crime for which a sentence of imprisonment can be imposed, stating specific reasons for the proposed action;

(2) a reasonable time, but not less than 7 days, to answer orally and in writing and to furnish affidavits and other documentary evidence in support of the answer;

(3) be represented by an attorney or other representative; and

(4) a written decision and specific reasons therefor at the earliest practicable date.

(c) An agency may provide, by regulation, for a hearing which may be in lieu of or in addition to the opportunity to answer provided under subsection (b)(2) of this section.

(d) An employee against whom an action is taken under this section is entitled to appeal to the Merit Systems Protection Board under section 7701 of this title.

(e) Copies of the notice of proposed action, the answer of the employee when written, and a summary thereof when made orally, the notice of decision and reasons therefor, and any order effecting an action covered by this subchapter, together with any supporting material, shall be maintained by the agency and shall be furnished to the Merit Systems Protection Board upon its request and to the employee affected upon the employee's request.

**5 C.F.R. §§ 1201.143-.145**

## § 1201.143. Right to hearing; filing complaint; serving documents on parties

(a) *Right to hearing*. If an agency proposes to remove a career appointee from the Senior Executive Service under 5 U.S.C. 3592(a) (2) and 5 CFR 359.502, and to place that employee in another civil service position, the appointee may request an informal hearing before an official designated by the Board. Under 5 CFR 359.502, the agency proposing the removal must provide the appointee 30 days advance notice and must advise the appointee of the right to request a hearing. If the appointee files the request at least 15 days before the effective date of the proposed removal, the request will be granted.

(b) *Place of filing*. A request for an informal hearing under paragraph (a) of this section must be filed with the Clerk of the Board. After the request has been assigned to a judge, subsequent pleadings must be filed with the Board office where the judge is located.

(c) *Initial filing and service*. Except when filed electronically under 1201.14, the appointee must file two copies of the request, together with numbered and tabbed exhibits or attachments, if any, and a certificate of service listing the agency proposing the appointee's removal or the agency's representative. The certificate of service must show the last known address, telephone number, and facsimile number of the agency or its representative. The appointee must serve a copy of the request on the agency or its representative, as shown on the certificate of service.

(d) *Subsequent filings and service*. Each party must serve on every other party or the party's representative one copy of each of its pleadings, as defined by § 1201.4(b). A certificate of service describing how and when service was made must accompany each pleading. Each party is responsible for notifying the Board and the other parties in writing of any change in name, address, telephone number, or facsimile number of the party or the party's representative.

## § 1201.144. Hearing procedures; referring the record

(a) The official designated to hold an informal hearing requested by a career appointee whose removal from the Senior Executive Service has

A10

been proposed under 5 U.S.C. 3592(a)(2) and 5 CFR 359.502 will be a judge, as defined at § 1201.4(a) of this part.

(b) The appointee, the appointee's representative, or both may appear and present arguments in an informal hearing before the judge. A verbatim record of the proceeding will be made. The appointee has no other procedural rights before the judge or the Board.

(c) The judge will refer a copy of the record to the Special Counsel, the Office of Personnel Management, and the employing agency for whatever action may be appropriate.

## § 1201.145. No appeal

There is no right under 5 U.S.C. 7703 to appeal the agency's action or any action by the judge or the Board in cases arising under § 1201.143(a) of this part. The removal action will not be delayed as a result of the hearing.